## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

PRIME PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Plaintiff,                     CASE NO: 5:23-cv-132-GAP-PRL

vs.

PAK AUTO TRANSPORTERS LLC,
KARINA ORTEGA, JACKELINE
MARIN RODRIGUEZ, STEPHEN
DIAMOND and ALEX & FAMILY
ADVENTURES, INC.,

        Defendants.

_____ /

### PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT
### AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Prime Property & Casualty Insurance, Inc. ("Prime" or "Plaintiff"),

pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and MDFL Local

Rule 3.01, files its Motion for Default Final Judgment and Incorporated

Memorandum of Law against Defendants PAK Auto Transporters LLC ("PAK"),

Karina Ortega ("Ortega"), Jackeline Marin Rodriguez ("Marin"), and Alex &

Family Adventures, Inc. ("Alex & Family") (collectively, the "Defendants")[1] as follows:

## INTRODUCTION

Prime brought this action seeking a declaration that it has no duty to defend and therefore to indemnify PAK, Ms. Ortega, and Alex & Family pursuant to the terms and conditions of a policy of insurance, with respect to the claims asserted by Ms. Marin stemming from a June 28, 2022 automobile accident.

## STATEMENT OF ADMITTED FACTS[2]

1.    Prime issued a Commercial Business Auto Insurance Policy to PAK, Policy No. PC21090675, which was in effect from September 10, 2021 through September 10, 2022 (the "Policy"). Am. Compl. [ECF No. 40] ¶ 13; *see also* Declaration of Palak Desai and the Policy (which is an exhibit to the declaration), attached as **Exhibit A**.

2.    The Policy contains the following pertinent provisions:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

A.    Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" "property damage to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

---

[1] Defendant Stephen Diamond was dismissed from this case without prejudice on December 15, 2023 pursuant to the Mediation Report which indicated that this case partially settled. [ECF No. 60].

[2] Citations to the Statement of Admitted Facts will be indicated with "SAF ¶ __."

1055303\315584309.v1

We will also pay sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

***

**B.    Exclusions**

This insurance does not apply to any of the following:

**3.    Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law, or any law relating to employer/employee benefits.

**4.    Employee Indemnification And Employer's Liability**

"Bodily injury" to:

   a.  An employee of the "insured" arising out of and in the course of:
       (1) Employment by the "insured"; or
       (2) Performing the duties related to the conduct of the "insured's" business; or
   b.  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

***

**5.    Fellow Employee**

"Bodily injury" to:

3

a. Any fellow employee of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

a. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

**\*\*\***

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A**.    **Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage"" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1.    **Who Is An Insured**

The following are "insureds":

a.    You for any covered "auto".

4

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability

\*\*\*

5

3.      On June 28, 2022, Ms. Marin, an employee of PAK, was a passenger in a 2017 Peterbilt 567 truck bearing VIN 1NPCXPEX9HD350358 (the "Vehicle"), which was operated by Ms. Ortega, another employee of PAK, when they were involved in an automobile accident in Orange County, Florida, (the "Incident"). Am. Compl. [ECF No. 40] at ¶ 15.

4.      As a result of her injuries, Ms. Marin submitted a claim to Prime, in excess of this Court's jurisdictional limits, seeking to recover personal injury damages allegedly arising from the Incident. Am. Compl. [ECF No. 40] at ¶ 16.

5.      The Court has entered Defaults against Defendants PAK, Ms. Ortega, Ms. Marin, and Alex & Family, who failed to timely respond to the complaint. [ECF Nos. 21, 23, 36, and 47].

6.      Prime seeks an entry of final default judgment against all Defendants.[3]

## MEMORANDUM OF LAW

## I.      STANDARDS OF LAW

### A.      STANDARD FOR DEFAULT JUDGMENT

District courts are empowered to enter default final judgment. Fed. R. Civ. P. 55(b) (2009); *Shandong Airlines Co., Ltd.*, 650 F. Supp. 2d 1202, 1206 (M.D. Fla.

---

[3] Because Prime seeks an entry of final judgment against all remaining Defendants, there is no possibility of inconsistent liability between the defendants.

1055303\315584309.v1

2009). Prime is entitled to a default final judgment as Defendants are in default. [ECF Nos. 21, 23, 36, and 47]. Defendants effectively admit Prime's well-pleaded allegations of fact in its complaint. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (party in default admits the well-pleaded facts of the complaint).  If the factual allegations in the complaint are sufficient to set forth a substantive cause of action for the relief sought, the district court may enter a default judgment. *See Shandong*, 650 F. Supp. 2d at 1206 (quoting *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x. 860, 863 (11th Cir. 2007).

### B.    STANDARD FOR DUTY TO DEFEND AND DUTY TO INDEMNIFY

Federal courts follow Florida's state court treatment of the duty to defend. *See generally Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016).  An insurer must defend only when the initial pleadings bring the case within coverage. *Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.*, 487 So. 2d 1051, 1054 (Fla. 1986).  It is well settled that the duty to defend is broader than, and distinct from, the duty to indemnify; thus, where there is no duty to defend, there is no duty to indemnify.  *Federal Ins. Co. v. Applestein*, 377 So. 2d 229, 233 (Fla. 3d DCA 1979) (citing *Battisti v. Continental Cas. Co.*, 406 F.2d 1318, 1321 (5th Cir. 1969) (Accordingly, "a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim.").

1055303\315584309.v1

"Unlike the duty to defend, which generally is triggered by the allegations in the underlying complaint, an insurance company's duty to indemnify an insured party is narrower and is determined by the underlying facts adduced at trial or developed through discovery during the litigation." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1324 (11th Cir. 2014) (internal citation omitted). Thus, in order for a duty to indemnify to arise, "the insurance policy must *cover* the relevant incident." *Id*. at 749 (emphasis added).

## C.    STANDARD FOR INSURANCE CONTRACT INTERPRETATION

"Insurance contract interpretation is a matter of law properly decided on summary judgment." *Rockhill Ins. Co. v. Northfield Ins. Co.*, 297 F. Supp. 3d 1279, 1283 (M.D. Fla. 2017) (citing *LaMadrid v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Pa., 567 F. App'x 695, 700 (11th Cir. 2014)). In Florida, "[w]here policy language is clear and unambiguous on its face, the insurance contract must be accorded full effect as written." *Mid-Continent Cas. Co. v. Clean Seas Co.*, No. 3:06-cvv-518-J-32MCR, 2009 U.S. Dist. LEXIS 25589, at *8 (M.D. Fla. March 27, 2009) (citing *Key Custom Homes, Inc. v. Mid-Continent Cas. Co*, 450 F. Supp. 1311, 1316 (M.D. Fla. 2006)). "Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Fabricant v. Kemper Independence Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007). For this reason, a court's inquiry always "begins with a review of the

plain language of the insurance policy as bargained for by the parties." *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 266 (Fla. 2003). These principles underscore the proscription precluding courts from "rewrit[ing] a contract, adding meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *AAA Life Ins. Co. v. Nicolas*, 603 So. 2d 622, 623 (Fla. 3d DCA 1992).

## II.    ARGUMENT

### A.    The Workers' Compensation and Employer's Liability Exclusions preclude coverage for Ms. Marin's damages

While the Policy may afford liability coverage against certain claims of bodily injury, the coverage extended is restricted by the featured endorsements and exclusions. In this case, the Policy specifically excludes coverage for the insured's obligations under "workers compensation, disability benefits or unemployment compensation law or any similar law" (the "Workers' Compensation Exclusion"). SAF ₱ 2. The Policy also excludes coverage for "bodily injury to (a) any Insured arising out of the course and conduct of the Named Insured's business operations; or; or (b) Any independent contractor or volunteer engaged in the course and conduct of the Named Insured's business operations" (the "Employer's Liability Exclusion"). SAF ₱ 2. These exclusions, independently, preclude coverage for the Incident.

The Workers' Compensation Exclusion featured in the Policy has been determined to be unambiguous and has been repeatedly enforced by courts

throughout the State. *See, e.g., Fla. Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890 (Fla. 3d DCA 1997) (holding that insurer was not liable for consent judgment entered by insured contractor and subcontractor's injured employee on the basis of workers' compensation and employer's liability exclusions); *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319 (M.D. Fla. 2010) (same). *See also, Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 679 (Fla. 4th DCA 2009) (excluding coverage under workers' compensation exclusion even though insured employer failed to maintain workers compensation insurance); *Capitol Specialty Ins. Corp. v. Royal Crane, LLC*, No. 14-CIV-60815-BLOOM/Valle, 2015 U.S. Dist. LEXIS 23983, at *15 (S.D. Fla. Feb. 26, 2015) ("Because employees are already protected by workers' compensation, the insurance policy bought to protect the general public generally specifically excludes coverage for injuries covered by workers' compensation. The insurance policy premium would necessarily be higher were this not so.") (internal citation omitted).

Likewise, the Employer's Liability Exclusion that is featured in the Policy has also been upheld with equal force in Florida. *See generally, Griffin v. Speidel*, 179 So. 2d 569, 571 (Fla. 1965) (holding that employer's liability exclusion "relieve[s] the insurer of responsibility for liability incurred by the insured because of work connected injuries to his business"); *Capitol Specialty Ins. Corp., supra*, 2015 WL 859073, at *6 (*citing Revoredo, supra*, 698 So.2d at 891 (general employee exclusion

and workers' compensation exclusion overlapped and were both valid, unambiguous and enforceable to preclude coverage)); *Greathead v. Asplundh Tree Expert Co.*, 473 So.2d 1380, 1383 (Fla. 1st DCA 1985) (same); *Lincoln Ins. Co. v. Home Emergency Services, Inc.*, 812 So. 2d 433 (Fla. 3d DCA 2001) (*en banc*) (finding no coverage existed under CGL policy for employee's claim against employer for spoliation of evidence in a product liability suit because policy did not apply to "bodily injury to…an employee of the insured arising out of and in the course of employment by the insured."); *see also Nautilus Ins. Co. v. S & S Indus. Servs., Inc.*, 2007 WL 951776, at *6 (S.D. Fla. Mar. 28, 2007) (enforcing employee exclusion, which amended and replaced previous policy provision, as unambiguous); *Amerisure Ins. Co. v. Orange & Blue Const., Inc.*, 913 F.Supp. 2d 1363, 1373 (S.D. Fla. 2012) (enforcing employee exclusion to preclude coverage).

"Florida case law suggests…the purpose of exclusions such as [the workers' compensation exclusion] is to exclude coverage of those employees protected by the workers' compensation law, whereas the language of [the employer's liability exclusion] acts to exclude liability for injury to employees *generally*." *Greathead, supra*, 473 So. 2d at 1383 (emphasis in original). "Although the two [exclusions] may overlap to a certain degree, they are not to be read together to exclude only those employees protected by workers' compensation." *Id. See also*, *Sinni, supra*, 676 F. Supp. 2d at 1333 (holding employer's liability exclusion in a commercial

1055303\315584309.v1

liability policy applies even if there is a limited relationship between the injury and the plaintiff's employment and finding no coverage where plaintiff was on the premises as an employee even though her workday was done and she was in the parking lot to go home); *Aetna Commercial Ins. Co. v. American Sign Co.*, 687 So. 2d 834 (Fla. 2d DCA 1996) (finding course of employment exclusion precluded coverage under commercial liability policy).

As such, where an individual meets the definition of "employee", his or her claims against the insured are excluded from coverage under the Worker's Compensation Exclusion—*regardless* of whether the individual actually receives workers' compensation benefits. *See Revoredo*, 698 So. 2d at 891-892 (holding that the Workers' Compensation Exclusion is effective to preclude coverage for employees' injuries under commercial liability policy notwithstanding the failure to secure payment of compensation). As stated by the Florida Supreme Court in *Morales v. Zenith Ins. Co.*, 152 So. 3d 557 (Fla. 2014):

> It is the fact that the employee's claim comes within the scope of the workers' compensation statute rather than the actual fact that he or she has recovered or is receiving workers' compensation for his or her harm, which is the basis for exclusion [under a workers' compensation exclusion].... [A]nyone who is eligible for compensation is excluded.

*Id.* at 563 (quoting 8 Couch on Ins. § 115.89).

The exclusions reinforce the tenet that the only coverage intended by a policy affording liability coverage "is the liability of the insured to the public, as

distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law." *Sinni*, 676 F. Supp. 2d at 1329 (citing *Revoredo*, 698 So. 2d at 892).

Here, the Policy clearly indicates that it does not provide coverage for bodily injury to PAK's employees. The undisputed facts establish that Ms. Marin and Ms. Ortega were employees of PAK acting in the course and scope of their employment with PAK. SAF ⁋ 3. It is undisputable that Ms. Marin was working for PAK and the worker's compensation exclusion or the employer's liability exclusion applies to preclude coverage.

## CONCLUSION

Based on the admitted allegations of Prime's Complaint and clear case law, Prime Property & Casualty Insurance, Inc. is entitled as a matter of law to a final default judgment in its favor and against PAK, Ms. Ortega, Ms. Marin, and Alex & Family, declaring that, pursuant to the covered auto provisions of the Policy, Prime has no duty to defend or indemnify PAK, Ms. Ortega, or Alex & Family in connection with any claims by Ms. Marin arising out of the June 28, 2022 automobile collision in Orange County, Florida involving Ms. Ortega and Ms. Marin.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 4, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record and via regular mail on to all parties on the service list.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/ Brittney Savino*
**RONALD L. KAMMER**
Florida Bar No. 0360589
rkammer@hinshawlaw.com
**BRITTNEY SAVINO**
Florida Bar No. 118898
bsavino@hinshawlaw.com
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Prime Property*

## SERVICE LIST

GAIA Aggregates LLC
c/o Roberto Roca, a Registered Agent
19541 NW 57th Place
Hialeah, FL 33015

Pablo Carrazana
535 NE 127th Street
North Miami, Florida  33161

Alexander Rincon Cardona
7550 South Blackhawk Street
Apartment 10108
Englewood, Colorado 80112

Luz Estella Cardona
7550 South Blackhawk Street
Apartment 10108
Englewood, Colorado 80112

1055303\315584309.v1